# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
  ) Case No.   24MJ9073
Black Apple iPhone )
Model: 15 Plus )
Seized as FP& F: 2025255200003401 Item: 004 )

**FILED**
Dec 10 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

*Judge's signature*

Date:   12/09/2024

City and state:   El Centro, California         HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:** Black Apple iPhone
Model: 15 Plus
Seized as FP& F: 2025255100003401 Item: 004
Seized from Alexander PARIAS
**(Target Device #3)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 3, 2024, up to and including December 3, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**     Black Samsung Cellphone
Model: Galaxy S22 Ultra
Seized as FP& F: 2025255200003401 Item: 002
Seized from JUAREZ, Karina
**(Target Device #1)**

**A-2:**     Metallic Blue Motorola Cellphone
Model: Moto G84
Seized as FP& F: 2025255200003401 Item: 003
Seized from PARIAS, Alexander
**(Target Device #2)**

**A-3:**     Black Apple iPhone
Model: 15 Plus
Seized as FP& F: 2025255200003401 Item: 004
Seized from PARIAS, Alexander
**(Target Device #3)**

**A-4:**     Orange Motorola
Model: RAZR Flip
Seized as FP& F: 2025255200003401 Item: 005
Seized from PARIAS, Alexander
**(Target Device #4)**

**A-5:**     Black Motorola
Model: Moto G50
Seized as FP& F: 2025255200003401 Item: 006
Seized from SERRANO-Nava, Israel
**(Target Device #5)**

as further described in Attachments A-1 to A-5, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Alexander PARIAS (PARIAS) and Karina JUAREZ for transportation of illegal alien Israel SERRNO-Nava (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from PARIAS, JUAREZ and the Material Witness on or about December 2, 2024, incident to the arrest of PARIAS, JUAREZ and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts

of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include

3

locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

  e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On December 2, 2024, BPAs – Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group#2 (ASU) were conducting surveillance in Calexico, California. At approximately 5:45 p.m., Supervisory BPA K. Hewson, who was observing the Calexico Border Patrol Station's Remote Video Surveillance System (camera operator) informed ASU Agents that one suspected illegal alien was on top of the United States/Mexico International Boundary Fence (IBF) south of Interstate 8 in between the Brocks Research Center Road Exit and Gordons Well Exit.

11. After observing the suspected illegal alien on top of the IBF, SBPA K. Hewson watched as the individual, later identified as Israel SERRANO-Nava (SERRANO), scaled down the IBF into the United States and began walking northbound, away from the IBF towards the All- American Canal.

12. As ASU Agents travelled to the area to intercept the vehicle that they believed would travel to the area and pick up the suspected illegal alien, SBPA K. Hewson continued to watch SERRANO as he ran to the All-American Canal, entered, and swam across the All-American Canal several times. SBPA-K. Hewson informed ASU Agents that it appeared as if SERRANO was searching for something on the ground. After sitting on the north canal bank, SBPA K. Hewson informed ASU Agents that SERRANO walked back northbound towards Interstate 8 and was now hugging a wooden pole line, south of the eastbound lanes of Interstate 8.

13. While SBPA K. Hewson continued to monitor SERRANO, SBPA M. Clinton observed a silver Ford Taurus (Ford) bearing Colorado license plates parked at the rest area, west of the Greys Well Exit. While observing the Ford, SBPA-I M. Clinton watched

as a male, later identified as PARIAS exited the driver's seat of the Ford, walked around and then entered back into the driver's seat of the Ford. While SERRANO remained south of Interstate 8, BPAs remained positioned in the rest area in order to continue static surveillance on the Ford.

14. After approximately twenty minutes, SBPA-I M. Clinton watched as the Ford exited the rest area, merged onto the westbound lanes of Interstate 8 and began travelling towards the area where SERRANO was concealing himself. As PARIAS approached the area, he briefly slowed down and pulled over before quickly accelerating and continuing westbound. The Ford then approached the area where SERRANO was concealing himself. As the Ford approached SERRANO, SBPA K. Hewson informed ASU Agents that SERRANO stood up, Ran to Interstate 8 and was now standing on the southside of Interstate 8. Agents observed as the Ford drastically slowed down, pulled over and came to a complete stop near SERRANO. After the Ford stopped, SERRANO ran to the Ford and entered the Ford. The Ford then merged back onto the eastbound lanes of Interstate 8 and continued travelling eastbound.

15. ASU Agents again initiated mobile surveillance on the Ford and kept constant visual on the Ford as it travelled eastbound on Interstate 8, towards the city of El Centro. The Ford continued northbound on Highway 111, which turns into the Brawley Bypass, and northwest on Highway 86 into the City of Westmorland, AUSA Agents watched as the Ford stopped at a hotel in Westmorland, California. As the Ford entered the parking lot, ASU Agents watched as the front seat passenger, later identified as JUAREZ, walked away from the Ford to the front desk of the hotel and spoke with the clerk. After briefly speaking with the clerk, ASU Agents watched as JUAREZ walked back to the Ford and entered the front passenger's seat. ASU Agents then watched as the Ford remained parked on the east side of the hotel before travelling to the empty lot on the northside of the hotel. At this time, ASU Agents lost visual of the Ford for approximately twenty seconds before travelling on the parallelling streets located on the northside of the hotel and then regained visual of the Ford, now with the doors and trunk open.

16. ASU Agents then observed the Ford exit the parking lot and continue travelling northbound on Highway 86 towards the Highway 86 Border Patrol Checkpoint, Which was fully operational at this time. As the Ford continued travelling towards the Highway 86 Checkpoint. During a preprimary inspection, Boder Patrol Agent (BPA) S. Martin approached JUAREZ, who was now driving the Ford, and PARIAS who was in the front passenger seat and identified himself as Border Patrol Agent. While BPA S. Martin questioned JUAREZ and PARIAS as to their citizenship, BPA C. Ceballos walked his canine partner around the Ford and conducted an open-air search. As BPA C. Ceballos approached the trunk area of the Ford, the canine stopped and alerted the trunk area.

17. After both JUAREZ and PARIAS stated that they were in the United States, they were asked to open the trunk of the Ford, to which they complied. After the trunk was opened, BPA C. Ceballos and BPA S. Martin discovered SERRANO attempting to conceal himself in the trunk under a blanket. BPA C. Ceballos and BPA S. Martin identified themselves as BPAs and questioned SERRANO as to his citizenship. SERRANO admitted to being in the United States illegally. SERRANO admitted that he made illegal entry by climbing the border fence in an area other than through a designated Port of Entry. JUAREZ, PARIAS and SERRANO were placed under arrest and were transported to the Calexico Border Patrol Station for further processing.

18. During a post-Miranda statement, JUAREZ admitted she and PARIAS had stopped at an unknown casino and at a gas station before arriving to the Border Patrol Checkpoint. JUAREZ stated that at the Border Patrol Checkpoint she was asked to step out of the vehicle and was arrested. JUAREZ stated she was arrested for alien smuggling. JUAREZ was questioned about the undocumented individual who was found in the trunk of her personal vehicle at the checkpoint and JUAREZ stated that she did not know how the undocumented individual got in the trunk. JUAREZ stated the Ford Taurus she was driving belongs to her.

19. Material Witness SERRANO-Nava stated he is a citizen of Mexico and that he does not have any legal documents allowing him to live, work or remain in the United

1  States legally. SERRANO stated he agreed to pay around $6,000.00 USD to be smuggled
2  illegally into the United States. SERRANO stated his final destination was San Francisco,
3  California to work in landscaping. SERRANO stated he boarded the backseat of the vehicle
4  and observed a male driver and a female passenger. SERRANO stated he was given dry
5  clothing by the people inside the vehicle because all his clothes were wet. SERRANO
6  stated they stopped at a hotel, and he boarder the trunk.

7   20.   During a search incident to arrest of JUAREZ, PARIAS, and the Material
8  Witness, five cellphones were found: a black Samsung cellphone (Target Device #1) was
9  found on JUAREZ's person by BPA-I H. Torres and JUAREZ claimed ownership of this
10 cellphone. A metallic blue Motorola cellphone (Target Device #2), a black Apple iPhone
11 (Target Device #3), and an orange Motorola RAZR cellphone (Target Device #4) were
12 found on PARIAS' person by BPA-I H. Torres and PARIAS claimed ownership of the
13 three cellphones. A black Motorola cellphone (Target Device #5) was found on
14 SERRANO's person by BPA-I H. Torres and SERRANO claimed ownership of this
15 cellphone. All cellphones were seized as evidence.

16  21.   I am aware that smuggling conspiracies require planning to successfully
17 evade detection by law enforcement. In my professional training and experience, this may
18 require planning and coordination in the days and weeks prior to the event. Additionally,
19 co-conspirators are often unaware of the subject's arrest and will continue to attempt to
20 communicate with the subject after the arrest to determine their whereabouts. Given this,
21 I respectfully request permission to search the Target Devices for data beginning on
22 November 3, 2024, up to and including December 3, 2024, the day after the arrest of
23 JUAREZ, PARIAS and the Material Witness.

## METHODOLOGY

25  22.   It is not possible to determine merely by knowing the cellular telephone's
26 make, model and serial number, the nature, and types of services to which the device is
27 subscribed, and the nature of the data stored on the device. Cellular devices today can be
28 simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

25. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that PARIAS, JUAREZ and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by PARIAS, JUAREZ, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 9th day of December, 2024.

_____ 2:38 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**	Black Samsung Cellphone
	Model:  Galaxy S22 Ultra
	Seized as FP& F: 2025255100003401 Item: 002
	Seized from Karina JUAREZ
	**(Target Device #1)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**    Metallic Blue Motorola Cellphone
Model: Moto G 84
Seized as FP& F: 2025255100003401 Item: 003
Seized from Alexander PARIAS
**(Target Device #2)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**        Black Apple iPhone
Model: 15 Plus
Seized as FP& F: 2025255100003401 Item: 004
Seized from Alexander PARIAS
**(Target Device #3)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**    Orange Motorola
Model: RAZR Flip
Seized as FP& F: 2025255100003401 Item: 005
Seized from Alexander PARIAS
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**  Black Motorola
Model: Unknown
Seized as FP& F: 2025255100003401 Item: 006
Seized from Israel SERRANO-Nava
**(Target Device #5)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 3, 2024, up to and including December 3, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.